JANUARY TERM, 1882, No. 450.        ·        MAY 18TH, 1882.

## Markley *versus* Kessering.

1. The fact that a contract of marriage was entered into on Sunday does not invalidate it if there be subsequent recognition of it by the parties.

2. *Quære* whether a contract of marriage is invalid if made upon Sunday.

3. In a suit for breach of promise of marriage the jury may fix the damages without knowing the financial means of either plaintiff or defendant.

4. Evidence of coarse and mercenary language used by the plaintiff after the time of the alleged breach, and communicated to the defendant, is inadmissible.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lancaster County.*

Case by Eliza Kessering against Charles Markley to recover damages for an alleged breach of promise of marriage.

On the trial in the court below, before PATTERSON, J , the plaintiff testified that she made the acquaintance of the defendant in the spring of 1879, at his home. He visited her in March, 1879, and called upon her about a dozen times up to July, and after that every evening, and very often in the afternoon. Upon Sunday, the 10th of August, 1879, "as regards getting married, he said he came to the conclusion he would like to get married, and he said he thought I would suit him better than any other woman he ever got acquainted with. . . . . I was agreed, and I told him so, and a day was fixed for the wedding." She made her dresses and underwear, and told her friends of the engagement. He gave her a silk dress for the wedding, and bought a trunk for the wedding tour.

January 24th, 1880, he told her he had concluded not to be married. "He said he was old and lame, and he didn't think he would get married any more." He never came back any more. There were other witnesses for the plaintiff, who testified to hearing the defendant say he was engaged to be married to the plaintiff; that he solicited her to name a day for the wedding; that it was postponed until February, 1880, because of the illness of defendant's father; that she was making preparations, and he visited her frequently.

The defendant admitted the visits, but denied the promise, the engagement, and the admissions testified to. He testified that he stopped visiting her in January, 1880; that his father was lying very sick then, and died February 14th; that

she was sending over to the house for him and coming herself, and it was an annoyance to the family.

The defendant called *Elmira Stackhouse*, and proposed to ask her whether in January, 1880, the plaintiff said, " Charlie has quit coming. He left me abruptly. This is the way with these Charlies. I never knew he had so little brains." And also said, " She hoped his father would live long enough to see what trouble she would make him."

The offer was disallowed, the question not being confined to the time preceding or on January 24th, 1880, on which day the alleged breach occurred.

The defendant excepted.

The defendant called *Augustus Hipple*, and proposed to show that shortly after the alleged breaking off in January, plaintiff said to witness, " She did not care a damn for Charlie; she wanted that pile of brick (pointing over to his father's house), and she said she would make him haul —— the rest of his days," which language was communicated to the defendant.

The offer was disallowed, and the defendant excepted.

Counsel for the defendant asked the Court to charge:

1. If the jury should find that there was a marriage contract, made on the 10th of August, 1879, between plaintiff and defendant, being on Sunday, plaintiff cannot recover, the nature of such contract being executory, and such contract would be void.

2. If the jury believe that the defendant entered into a contract of marriage with plaintiff, and stopped his visits by reason of his father's sickness and death, and she refused to recognize and speak to him after his death, when he had recognized her, the verdict must be for the defendant.

The Court answered these points as follows:

1. We refuse that point, under the evidence of the case.

2. We deny that point as presented. It is for the jury to determine from all the evidence which party failed and refused to execute the contract by an actual marriage, if the jury find a contract.

The Court, in its general charge, left it to the jury to ascertain whether or not a contract had been made, and said, *inter alia :*

" You, the jury, may consider the pecuniary value of the marriage, when there is any evidence as to their, the parties, financial condition. There is very little evidence on that point. It is testified that the lady—the plaintiff—is about thirty-five or six years of age, a woman of energy, supporting herself by her own application and industry, amiable in manner, and respectable, so far as you know from

[Markley v. Kessering.]

the evidence.   As to the defendant, it is testified that he is about fifty-one years old, and worked at home for his father, his father being now deceased, but nothing is testified about his wealth.   [In fixing the damages, we say that you may consider, without knowing the financial means of either plaintiff or defendant] the pecuniary value of the marriage, the high or low or moderate station or condition in life that would be gained thereby, and the injury to the feelings, the affections, the self-respect, and the wounded pride of the lady, the plaintiff."

February 17, 1882. Verdict for the plaintiff for $998.75, upon which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors the refusal to affirm the points, etc., the part of the charge within brackets, and the exclusion of the testimony of Elmira Stackhouse and Augustus Hipple as offered.

*Steinmetz* and *Reinoehl*, for the plaintiff in error.

A promise to marry is a civil contract, differing in no legal aspect from any ordinary contract, and if made on Sunday and not excuted, is, like all other executory contracts made on Sunday, null and void : Shuman *v.* Shuman, 3 Casey, 90 ; Kepner *v.* Keefer, 6 Watts, 231 ; Fox *v.* Mensch, 3 W. & S., 444 ; Gangwere's Estate, 2 Harris, 429.

The only exceptions to the Act of 1794 are works of necessity or charity.

The evidence excluded should have been admitted because if the expressions were made as alleged, no court would hold a man bound to marry such a virago.

*D. McMullen* and *S. H. Reynolds*, for defendant in error.

Even if the contract of marriage made in express terms on Sunday was void, the subsequent acts of the parties, in the absence of an express contract, would constitute an engagement: Moritz *v.* Melhorn, 1 Harris, 331 ; Baldy *v.* Stratton, 1 Jones, 318 ; McCormick *v.* Robb, 12 Harris, 44.

It was not necessary to offer evidence to the financial ability of the defendant : Baldy *v.* Stratton, *ut supra.*

May 29th, 1882.—Per Curiam: There is nothing in any of the assignments of error.   The fact that the contract of marriage was entered into on Sunday could not avail in view especially of the evidence of subsequent recognition.   The case was properly submitted to the jury.

Jugment affirmed.